# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MYRON A. GLADNEY,

        Plaintiff,

v.

NATHANIEL SILVA, SGT. NELSON, JOHN DOE, KYLE DEMERS, MARCO STEPHENSON, YANA PUSICH, TONIA MOON and NATHAN PACH,

        Defendants.

Case No. 24-CV-764-JPS

**ORDER**

Plaintiff Myron A. Gladney, an inmate confined at Waupun Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendant violated his constitutional rights. ECF No. 1. This Order screens Plaintiff's complaint and resolves his motion for leave to proceed without prepaying the filing fee and motion to notify the officer in charge of remaining balance of PLRA filing fee to be deducted from Plaintiff's release account.

**1. MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing

fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On July 12, 2024, the Court ordered Plaintiff to pay an initial partial filing fee of $39.02. ECF No. 8. Plaintiff paid that fee on August 6, 2024. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 2. The Court will also grant Plaintiff's motion to notify the officer in charge of remaining balance of PLRA filing fee to be deducted from Plaintiff's release account. ECF No. 9.

While it is true that the Court has the authority to order disbursements from a prisoner's release account for payment of an initial partial filing fee, *see, e.g.*, *Doty v. Doyle*, 182 F. Supp. 2d 750, 751 (E.D. Wis. 2002), it is less clear that the court can authorize a prisoner to tap into his release account to pay current (or future) litigation costs. "Nothing in the [PLRA] can be interpreted as congressional intent that prisoners deplete savings or release account balances in order to pay off their filing fee debts." *Wilson v. Anderson*, No. 14-CV-0798, 2014 WL 3671878, at *3 (E.D. Wis. July 23, 2014) (declining to order that a prisoner's full filing fee be paid from his release account, "[g]iven the [DOC's] rationale for segregating funds into a release account" and the absence of any statutory authority compelling the court to do so) (citations omitted).

Notwithstanding the foregoing, however, the Court concludes that under the circumstances of this case, such authorization should be given. Plaintiff notes that he is serving a mandatory life sentence and that his first opportunity for parole is December 18, 2071. ECF No. 9 at 4. Plaintiff also notes that he is not a litigious filer and that he currently has only one civil lawsuit pending. *Id.* As such, and specifically under these circumstances,

the Court will grant Plaintiff's motion to pay the remainder of the filing fee from his release account.

## 2. SCREENING THE COMPLAINT

### 2.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799

F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff brings this case against Defendants Nathaniel Silva ("Silva"), Sgt. Nelson ("Nelson"), John Doe ("Doe"), Kyle Demers ("Demers"), Marco Stephenson ("Stephenson"), Yana Pusich ("Pusich"), Tonia Moon ("Moon"), and Nathan Pach ("Pach"). ECF No. 1 at 1. Plaintiff alleges that he was denied the minimal amount of water needed for drinking and sanitation between May 9, 2023 and May 11, 2023. *Id.* at 4. Plaintiff was housed in the restrictive housing unit as a result of a conduct report. *Id.* On May 9, 2023, while in his cell, Plaintiff engaged in exercise activity for one hour. *Id.* Plaintiff's exercise routine consisted of 150 pushups, 150 squats, 100 sit-ups, and 150 jumping jacks. *Id.* at 4–5. After completing the exercise, Plaintiff was sweating profusely, he felt dizzy, and he was extremely thirsty. *Id.* at 5. Plaintiff went to the sink to drink water, but no water came out. *Id.* Plaintiff informed Silva that the was not working in his cell and that he was extremely thirsty. *Id.* Plaintiff showed Plaintiff that his sink would not work; Silva told the command station to reset Plaintiff's sink. *Id.*

At approximately 2:50 p.m., Plaintiff pressed the emergency button to tell Nelson that the water in his cell was not working. *Id.* Nelson attempted to reset the sink and asked Plaintiff if the water was working; Plaintiff responded it was not. *Id.* at 5–6. At approximately 3:40 p.m., Plaintiff told Silva that the water still was not working; Silva responded that

he would put in a work order and that he had told the sergeant about the issue. *Id.* at 6. Plaintiff received a milk with his dinner; however, at approximately 3:50 p.m., he became overwhelmed with nausea, and he vomited on the floor. *Id.* At 3:50 p.m., he pressed his emergency button and said he had vomited on the floor, was feeling sick and dehydrated, and that his water was still not working. *Id.* Nelson responded that he was "working on it" and shut off the intercom. *Id.*

Approximately three hours later, Plaintiff vomited a second time and felt increasingly dizzy. *Id.* Plaintiff pressed the emergency button again and repeated his issue. *Id.* at 6–7. Nelson again responded that a work order had been put in and that it would likely be fixed in the morning. *Id.* at 7. Plaintiff then wrote an interview/request to the sergeant to make him or her aware of the water issue. *Id.* Plaintiff never received any response. *Id.*

On May 10, 2024, Plaintiff ate a bowl of cereal with milk for breakfast. *Id.* At approximately 9:45 a.m., Plaintiff had extreme cramps and went to the toilet to defecate. *Id.* While wiping himself, he accidently got feces on his fingertips. *Id.* Without running water, Plaintiff was unable to wash his hands. *Id.* At approximately 10:08 a.m., Plaintiff pressed the emergency button and again told staff his issues and that his water was still not working. *Id.* at 8. During lunch, with feces still on his fingertips, Plaintiff had to drink more milk. *Id.* At approximately 1:45 p.m., Plaintiff experienced more stomach cramping and had to defecate again. *Id.* Plaintiff was again unable to wash his hands. *Id.* At approximately 3:00 p.m., Stephenson arrived at his cell to pass out supplies. *Id.* Plaintiff told Stephenson that he had been without water for the past twenty-four hours and that he was extremely thirsty. *Id.* Plaintiff showed Stephenson that the water was not working. *Id.* Stephenson told Plaintiff that he would let the

sergeant know and that Plaintiff would most likely be moved to another cell. *Id.* at 8–9.

At dinner, Plaintiff still felt nauseous, he had a severe headache a loss of appetite. He was extremely thirsty and drank his milk. *Id.* at 9. At approximately 4:20 p.m., Plaintiff pressed the emergency button to complain of extreme thirst and dehydration as a result of the water not working. *Id.* Demers replied that he was aware of the situation and that a work order was put in. *Id.* Later that evening, Plaintiff experienced severe cramps and had to defecate. Again, he was unable to wash his hands. *Id.* Plaintiff felt lethargic and lost consciousness when he laid down. *Id.* At some point later, Plaintiff felt nauseous and felt like he was going to vomit. *Id.* at 9–10. Plaintiff wrote another interview/request to the sergeant for help. *Id.* at 10. Plaintiff also wrote to Pusich for help, but he received no responses. *Id.*

On May 11, 2023, Plaintiff woke up with an extreme headache and he felt dizzy and nauseous. *Id.* At 7:30 a.m., Plaintiff told Pach that his water still was not working and that he had been without water for forty-two hours. *Id.* Pach told Plaintiff that he would try to fix the sink. *Id.* At 11:00 a.m., Plaintiff told Pach that he felt sick, was dehydrated, and needed water. *Id.* at 11. Pach responded that he could not fix the sink, and that Plaintiff would probably have to be moved. *Id.* Plaintiff laid down to save his energy and passed out. *Id.* At some point that afternoon, Plaintiff was awoken by a plumber who was fixing his sink. *Id.* The plumber told Plaintiff that no one told him about the issue until that afternoon. *Id.* Institute complaint examiner Moon initially failed to accept his properly filed inmate complaint. *Id.* at 12. Moon's supervisor confirmed that Moon erred in not

accepting the complaint. *Id.* Eventually, the complaint was affirmed and Warden Hepp affirmed Plaintiff's inmate complaint. *Id.*

### 2.3 Analysis

The Court finds that Plaintiff may proceed on an Eighth Amendment conditions of confinement claim against Silva, Nelson, Demers, Stephenson, Pusich, Pach, and Doe. A prisoner's claim of unconstitutional conditions of confinement is analyzed under the Eighth Amendment's cruel and unusual punishment clause. *See Farmer v. Brennan*, 511 U.S. 832, 834 (1994). A prisoner is entitled to live in conditions that do not amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Detainees are entitled to be confined under humane conditions that provide for their "basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

To establish a constitutional violation with respect to an inmate's living conditions, he must be able to demonstrate both: (1) the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities," and (2) the defendants acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Woods v. Schmeltz*, No. 14-CV-1336, 2014 WL 7005094, at *1 (C.D. Ill. Dec. 11, 2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also Budd v. Motley*, 711 F.3d 840, 842–43 (7th Cir. 2013). Depriving a prisoner of drinkable and safe water constitutes an Eighth Amendment conditions of confinement claim. *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015).

Here, at the early pleading stage, Plaintiff has sufficiently stated an Eighth Amendment conditions of confinement claim against Silva, Nelson, Demers, Stephenson, Pusich, Pach, and Doe as relates to his access to water for drinking and sanitation. Plaintiff alleges that he was deprived of water for over forty-two hours and that these Defendants were aware of the situation and failed to provide him access to water. Although Plaintiff was provided milk during this time, Plaintiff vomited the milk and still experienced extreme symptoms as a result of the dehydration. Plaintiff also alleges his inability to clean feces off his hands for multiple days. At the screening stage, the Court therefore finds Plaintiff's allegations sufficient to proceed against Silva, Nelson, Demers, Stephenson, Pusich, Pach, and Doe for an Eighth Amendment conditions of confinement claim.

Plaintiff may not, however, proceed against Defendant Moon. For a prison official to be personally liable, he or she must have participated in some way with the alleged constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") (internal quotation marks and citation omitted); *see also Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Generally, the denial of a grievance "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Moon's involvement with Plaintiff's prisoner grievance does not show that she participated in the constitutional deprivation. As such, the Court will dismiss Moon for the failure to state a claim against her.

Page 8 of 12
Case 2:24-cv-00764-JPS   Filed 09/24/24   Page 8 of 12   Document 10

### 3. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment conditions of confinement claim against Defendants Silva, Nelson, Demers, Stephenson, Pusich, Pach, and Doe for denying Plaintiff access to water.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to notify the officer in charge of remaining balance of PLRA filing fee to be deducted from Plaintiff's release account, ECF No. 9, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff may pay the remaining $310.98 balance of filing fee from his release account;

**IT IS FURTHER ORDERED** that Defendant Moon be and the same is hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants **Silva, Nelson, Demers, Stephenson, Pusich, and Pach**;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint withinسيxty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D.

Page 10 of 12
Case 2:24-cv-00764-JPS    Filed 09/24/24    Page 10 of 12    Document 10

Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 24th day of September, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

<p style="color:red">Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:</p>

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.