# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MYRON A. GLADNEY,

     Plaintiff,

v.

NATHANIEL SILVA, MARCO
STEPHENSON, YANA PUSICH,
NATHAN PACH, LOGAN GOEHL,
TODD OLIG, and TREVOR
STANDISH,

     Defendants.

Case No. 24-CV-764-JPS

**ORDER**

Plaintiff Myron A. Gladney, an inmate confined at Kettle Moraine Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. ECF No. 1. On September 24, 2024, the Court screened the complaint and ordered service on Defendants. ECF No. 10. On December 11, 2024, the Court entered a scheduling order. ECF No. 18. On July 21, 2025, the Court screened the amended complaint and ordered service on the newly added defendants. ECF No. 51.

Thereafter, Defendants filed a motion for partial summary judgment based on the failure to exhaust administrative remedies. ECF No. 56. The motion is now fully briefed and ready for disposition. ECF Nos. 57, 62, 66. For the reasons explained below, the Court will deny Defendants' motion and this case will proceed on the merits against all defendants. The Court will accordingly deny Plaintiff's motion for order in opposition to Defendants' summary judgment motion, ECF No. 61, as moot.

## 1. STANDARD OF REVIEW

### 1.1 Summary Judgment

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

### 1.2 Exhaustion of Prisoner Administrative Remedies

The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). He must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Id.*; *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The exhaustion requirement furthers several purposes, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties

the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by a defendant. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

### 1.2.1   Inmate Complaint Review System

The Wisconsin Department of Corrections (the "DOC") maintains an inmate complaint review system ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The ICRS "allow[s] inmates to raise in an orderly fashion issues regarding department policies, rules, living conditions, and employee actions that personally affect the inmate or institution environment, including civil rights claims." *Id.* § DOC 310.01(2)(a).  Before commencing a civil action or special proceedings, "inmate[s] shall exhaust all administrative remedies the [DOC] has promulgated by rule." *Id*. § DOC 310.05.

There are two steps an inmate must take to exhaust the available administrative remedies. First, the inmate must file an offender complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* § DOC 310.07(2). The ICE may reject the complaint or return the complaint to the inmate and allow him or her to correct any issue(s) and re-file within ten days. *See id.* § DOC 310.10(5),(6). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority within ten days. *Id.* § DOC 310.10(10).[1] If the complaint is not rejected, the ICE issues a

---

[1] The ICRS defines a "reviewing authority" as "a person who is authorized to review and decide an inmate complaint." Wis. Admin. Code § DOC 310.03(15).

recommendation of either dismissal or affirmance to the reviewing authority. *Id.* § DOC 310.10(9),(12). The reviewing authority ("RA") will affirm or dismiss the complaint, in whole or in part, or return the complaint to the ICE for further investigation. *Id.* § DOC 310.11(2).

Second, if the ICE recommends, and the RA accepts, dismissal of the complaint, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id.* §§ DOC 310.09(1), 310.12. The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id.* §§ DOC 310.12(2), 310.13. The inmate exhausts this administrative process when he or she receives the Secretary's decision. *Id.* § DOC 310.13(2),(3). If the inmate does not receive the Secretary's written decision within ninety days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted. *Id.* § DOC 310.13(4).

## 2.    RELEVANT FACTS

Defendants' partial motion for summary judgment addresses only the issue of whether Plaintiff exhausted his administrative remedies as to certain defendants in this case. The Court accordingly finds the following facts relevant to the disposition of the issue at hand.

### 2.1    Plaintiff's Allegations

Plaintiff brings his amended complaint against Defendants Nathaniel Silva ("Silva"), Trevor Standish ("Standish"), Todd Olig ("Olig"), Logan Goehl ("Goehl"), Marco Stephenson ("Stephenson"), Yana Pusich ("Pusich"), and Nathan Pach ("Pach"). ECF No. 52 at 1. Plaintiff alleges that he was denied the minimal amount of water needed for drinking and sanitation between May 9, 2023 and May 11, 2023. *Id.* at 2. Plaintiff was housed in the restrictive housing unit as a result of a conduct report. *Id.* On

May 9, 2023, while in his cell, Plaintiff engaged in exercise activity for one hour. *Id.* Plaintiff's exercise routine consisted of 150 pushups, 150 squats, 100 sit-ups, and 150 jumping jacks. *Id.* After completing the exercise, Plaintiff was sweating profusely, felt dizzy, and was extremely thirsty. *Id.* Plaintiff went to the sink to drink water, but no water came out. *Id.* Plaintiff informed Silva that the water was not working in his cell and that he was extremely thirsty. *Id.* Plaintiff showed Silva that his sink would not work; Silva told the command station to reset Plaintiff's sink. *Id.*

At approximately 2:50 p.m., Plaintiff pressed the emergency button to tell Olig that the water in his cell was not working. *Id.* Olig attempted to reset the sink and asked Plaintiff if the water was working; Plaintiff responded it was not. *Id.* at 3. At approximately 3:40 p.m., Plaintiff told Silva that the water still was not working; Silva responded that he would put in a work order and that he had told the sergeant about the issue. *Id.* Plaintiff received a milk with his dinner; however, at approximately 3:50 p.m., he became overwhelmed with nausea, and he vomited on the floor. *Id.* At 3:59 p.m., he pressed his emergency button and said he had vomited on the floor, he was feeling sick and dehydrated, and his water was still not working. *Id.* Olig responded that he was "working on it" and shut off the intercom. *Id.*

Approximately three hours later, Plaintiff vomited a second time and felt increasingly dizzy. *Id.* Plaintiff pressed the emergency button again and repeated his issue. *Id.* Nelson again responded that a work order had been put in and that it would likely be fixed in the morning. *Id.* Plaintiff then wrote an interview/request to the sergeant to make him or her aware of the water issue. *Id.* Plaintiff never received any response. *Id.*

On May 10, 2023, Plaintiff ate a bowl of cereal with milk for breakfast. *Id.* At approximately 9:45 a.m., Plaintiff had extreme cramps and went to the toilet to defecate. *Id.* While wiping himself, he accidently got feces on his fingertips. *Id.* Without running water, Plaintiff was unable to wash his hands. *Id.* At approximately 10:08 a.m., Plaintiff pressed the emergency button and told Goehl his issues and that his water was still not working. *Id.* at 4. Goel responded that a work order had been put in and that Plaintiff should be patient. *Id.* During lunch, with feces still on his fingertips, Plaintiff had to drink more milk. *Id.* At approximately 1:45 p.m., Plaintiff experienced more stomach cramping and had to defecate again. *Id.* Plaintiff was again unable to wash his hands. *Id.* At approximately 3:00 p.m., Stephenson arrived at his cell to pass out supplies. *Id.* Plaintiff told Stephenson that he had been without water for the past twenty-four hours and that he was extremely thirsty. *Id.* Plaintiff showed Stephenson that the water was not working. *Id.* Stephenson told Plaintiff that he would let the sergeant know and that Plaintiff would most likely be moved to another cell. *Id.*

At dinner, Plaintiff still felt nauseous; he had a severe headache and a loss of appetite. He was extremely thirsty and drank his milk. *Id.* At approximately 4:20 p.m., Plaintiff pressed the emergency button to complain of extreme thirst and dehydration as a result of the water not working. *Id.* Standish replied that he was aware of the situation and that a work order was put in. *Id.* Later that evening, Plaintiff experienced severe cramps and had to defecate. Again, he was unable to wash his hands. *Id.* Plaintiff felt lethargic and lost consciousness when he laid down. *Id.* At some point later, Plaintiff felt nauseous and like he was going to vomit. *Id.* Plaintiff wrote another interview/request to the sergeant for help. *Id.* at 10.

Plaintiff also wrote to Pusich for help, but he received no responses. *Id.* at 5.

On May 11, 2023, Plaintiff woke up with an extreme headache and he felt dizzy and nauseous. *Id.* At 7:30 a.m., Plaintiff told Pach that his water still was not working and that he had been without water for forty-two hours. *Id.* Pach told Plaintiff that he would try to fix the sink. *Id.* At 11:00 a.m., Plaintiff told Pach that he felt sick, was dehydrated, and needed water. *Id.* at 11. Pach responded that he could not fix the sink, and that Plaintiff would probably have to be moved. *Id.* Plaintiff laid down to save his energy and passed out. *Id.* At some point that afternoon, Plaintiff was awoken by a plumber who was fixing his sink. *Id.* The plumber told Plaintiff that no one told him about the issue until that afternoon. *Id.* Institute complaint examiner Moon initially failed to accept his properly filed inmate complaint. *Id.* Moon's supervisor confirmed that Moon erred in not accepting the complaint. *Id.* at 6. Eventually, Warden Hepp affirmed Plaintiff's inmate complaint. *Id.*

### 2.2 Exhaustion Facts

Defendants filed proposed findings of fact along with their motion, ECF No. 58, and Plaintiff responded, ECF No. 63. Plaintiff filed his own proposed facts, ECF No. 64, and Defendants responded, ECF No. 67. No material issues of fact exist. The following facts are therefore taken from the parties' proposed findings of fact except where explicitly noted.

On May 15, 2023, the ICE received Plaintiff's inmate complaint, WCI-2023-7069. In his complaint, Plaintiff alleged he was deprived of water, and that between the time that he informed staff of the issue and when his water was fixed, forty-eight hours had elapsed. Plaintiff indicated that he attempted the resolve the issue first with the following individuals: "CO

Silva, 2nd Shift Sergeant both on 5-9: 1 shift sergeant on 5-12 CO Stevenson & 2nd shift sergeant both on 5-10; 1 shift sergeant & CO Pach on 5-11." ECF No. 59-2 at 12. Regarding the details of his complaint, Plaintiff wrote:

> While my water was fixed at appx [sic] 1:45 p.m. on 5-11-23 what I complain about is "how long it took from when I first made staff aware of this issue on 5-9-23 at appx 2:00 through to it actually being fixed by the plumber on 5-11-23 at appx 1:45." To be sure, on 5-9-23 at appx 2:00 I informed CO Silva that my water wasn't working in my cell. I asked him to look as I pressed both buttons to demonstrate to him that the water wasn't working at all. Upon CO Silva witnessing my water issue he attempted to reset the water and walked away. During dinne [sic] I informed CO Silva that the water still wasn't working and he told me "he would be putting a work order in and informed the sergeant of the issue." I then wrote a request to RHU-1st shift sergeant dated 5-9-23 informing him of the issue and filed an inmate complaint that wasn't accepted and returned on 5-12-23. On 5-10-23 during supplies at appx 3 o'clock I called CO Stevenson's attention to my water issue and demonstrated for him so he could see for himself. I informed him that I have had no water for 24 hours and was extremely thirsty. He told me that I would most likely be moved to a different cell and that he would let 2 nd shift sergeant know. Later on at dinner meal CO Stevenson told me that I wouldn't be moved because no cells were open but that a plumber would be called." I again wrote 1st shift sergeant and the Security Director dated both 5-10-23 of which I recieved [sic] no response. On 5-11-23 I informed CO Pach during breakfast that my water wasn't working and that I'd been without water for 42 hours and was extremely [sic] thirsty. I pressed the buttons where he observed that my water wasn't working. He told me he would try and fix it. Later at lunch meal at appx 11:30 a.m. CO Pach told me that he couldn't fix it but that I would probably be moved. At appx 1:20 p.m. the plumber arrived and informed me that he was at my cell to fix my sink. He asked me to push the buttons and I oliged/complied [sic]. After witnessing that my water wasn't working he began the process of fixing my water. After fixing

my water I informed the plumber that I hadn't drank water for 48 hours and he replied that "he wasn't made aware of the issue until that afternoon." I asked him what was wrong with the water and he told me that the water is controlled by a computer system and it malfunctioned." I complain because it shouldn't of took appx 2 days to fix." No water for 48 hours…

On July 10, 2023, Plaintiff appealed the undecided inmate complaint to the CCE. In his appeal, Gladney explained that he had not yet received a decision from the ICE on WCI-2023-7069, so he presumed the complaint was dismissed or denied. In his appeal, Gladney realleged that he spoke with Silva, Pach, and Stephenson.

Plaintiff also submitted an "RHU Alarm Report," or intercom report, to the CCE which he stated:

> [H]ighlights my contact with Sgt. Nelson on 5/9/2023 where I informed him of my "extreme thirst", "light-headedness" and that my water wasn't working. I also had contact on 5/10/2023 as shown in the report with first shift sergeant making him aware of my water issue and my symptoms of dehydration. Alarm report also shows my contact with prison officials making that shift aware of my water and hydration issues.

On July 19, 2023, ICE Tonia Moon recommended affirming Plaintiff's complaint, noting that the issue was not addressed by security by calling maintenance at the time it happened. On July 25, 2023, Warden Randall Hepp, as the reviewing authority, affirmed Plaintiff's complaint. On July 31, 2023, CCE Brad Hompe recommended rejecting Plaintiff's appeal as the appeal was not filed in accordance with s. DOC 310.09. On August 21, 2023, the Office of the Secretary accepted Hompe's recommendation to reject the appeal. CCE Emily Davidson found no further inmate complaints regarding the claims on which Plaintiff was allowed to proceed.

### 3.    ANALYSIS

Defendants request partial summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies with respect to Olig, Standish, and Goehl before filing the instant lawsuit. Plaintiff alleges that he notified these defendants about his water issue by using his emergency call button. ECF No. 52. Defendants do not dispute that Plaintiff exhausted his administrative remedies as to the Eighth Amendment claim against the remaining defendants, and therefore do not seek summary judgment on the claims against them. ECF No. 57 at 1-2. Defendants argue, however, that Plaintiff's inmate complaint failed to provide notice about Olig, Standish, and Goehl's alleged actions and therefore must be dismissed. *Id.* at 2.

One purpose of the exhaustion requirement is to permit prison officials the opportunity to address inmate concerns internally before an inmate initiates litigation. *Woodford v. Ngo,* 548 U.S. 81, 89 (2006); *Schillinger v. Kiley,* 954 F.3d 990, 995 (7th Cir. 2020). Exhaustion "promotes efficiency because a claim can generally be resolved much more quickly in an administrative proceeding than in litigation in federal court." *Schillinger*, 954 F.3d at 995. To provide notice of the conduct complained of, an inmate's complaint must contain the information required by the prison's administrative rules. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). Where those rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 650; *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). An inmate need not state "facts, articulate legal theories, or demand particular relief," nor must he name each potential defendant, so long as the grievance "object[s] intelligibly to some asserted shortcoming." *Strong,* 297 F.3d at 650; *Riccardo*, 375 F.3d at 524. In this way, the approach to interpreting inmate complaints is akin to

the federal notice pleading system. *Dye v. Kingston*, 130 F. App'x 52, 55 (7th Cir. 2005). Wisconsin's administrative rules provide little guidance as to the required contents of an inmate complaint; however, those rules do require that offender complaints "[c]ontain only one issue per complaint, and [] clearly identify the issue." Wis. Admin. Code DOC § 310.09(1)(e).

Defendants rely on *Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024), for the proposition that Plaintiff's inmate complaint did not give notice about his claims against Olig, Standish, and Goehl. In *Jackson*, the plaintiff fully exhausted several grievances that complained a single officer refused to turn on the water in his crisis cell and singled him out for mistreatment via the water issue. In litigation, the plaintiff pursued claims against the single officer but also added that six additional prison employees knew of and refused to fix his lack of access to water. The Seventh Circuit concluded that the inmate's fully exhausted grievances about the single officer were not sufficient to exhaust the claims he later added against the six individual employees because "the allegation[s] in his grievance[s] [are] substantively distinct from the allegation[s] in his federal complaint." *Jackson*, 105 F.4th at 960 (*citing Bowers v. Dart*, 1 F.4th 513, 517 (7th Cir. 2021)).

Here, the Court disagrees with Defendants' argument because *Jackson* is distinguishable from this case. The inmate complaint in *Jackson* put the prison on notice that the plaintiff had complained about his lack of water to exactly one prison official. Here, by contrast, Plaintiff identified seven individuals that he attempted to resolve his issue with prior to filing his inmate complaint. Plaintiff sufficiently put prison staff on notice of the wide-spread issue that at least seven staff members were ignoring his complaints about lacking access to water for days. The Court finds that

Plaintiff's allegations in his grievance were not substantively distinct from the allegations in this case.

The Court acknowledges that Plaintiff did not identify all the individuals by specific name and instead used their titles, which in some instances were not correct; however, it does not find this issue to be outcome determinative. *Jackson* reaffirmed the proposition that there is no requirement to "specifically name every potential defendant" in a grievance. *Jackson*, 105 F.4th at 959–60. Plaintiff misidentified the titles of the staff involved—listing "sergeants" instead of "SEG-1" officers, but Plaintiff incorrectly believed he was speaking to sergeants at the time and only learned correct identities during discovery this case. There are no facts in the record about how a SEG-1 prison official differs from a sergeant or how Plaintiff should have known to complain about SEG-1 officials. It is Defendants' burden to prove Plaintiff failed to exhaust administrative remedies. That Plaintiff "didn't specifically name [all] the defendants in the grievance was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). The Court therefore finds that Plaintiff exhausted his administrative remedies with respect to all defendants. As such, the Court will deny Plaintiff's motion for partial summary judgment.

The Court momentarily addresses Defendants' remaining argument that Plaintiff did not exhaust his administrative remedies with respect to a claim for the presence of feces in his cell during this same time period. ECF No. 57 at 4 ("There was no mention of feces in the inmate complaint…."). The Court agrees that Plaintiff's inmate complaint did not put prison staff on notice about the presence of feces in his cell. Plaintiff, however, is not proceeding on a claim for this issue. The Court's second screening order

clearly states that Plaintiff could proceed on an Eighth Amendment conditions of confinement claim against Defendants "for denying Plaintiff access to water." ECF No. 51 at 18. Plaintiff alleges that he was unable to clean the feces off his hands for days as a result of not having access to water, which could certainly be part of his claim for the purposes of damages. For clarity going forward, however, the Court reiterates that Plaintiff proceeds on a claim only for Defendants denying him access to water.

## 4.    DISCOVERY ISSUES

Finally, the Court addresses various motions filed related to discovery and the schedule going forward. Currently pending are Plaintiff's motion to compel discovery, for leave to file interrogatories, and to modify scheduling order, ECF No. 68, and Plaintiff's motion to appoint forensic document examiner, ECF No. 74. The Court previously stayed the summary judgment deadline, so the Court will first deny the motion to modify the scheduling order as moot. Motions for summary judgment will now be due on **September 14, 2026**.

Next, the Court will deny Plaintiff's motion to compel and for leave to file interrogatories without prejudice. Plaintiff did not timely seek leave to file additional interrogatories as required by Federal Rule of Civil Procedure 33. Plaintiff seeks additional information related to certain Defendants' credibility, including information about Silva's and Pach's employment terminations and Defendants' employment records. Courts have found that this type of discovery is irrelevant and disproportionate to the needs of a case at the summary judgment stage. *See, e.g, Williams v. Bouzek,* No. 19-CV-607-JDP, 2021 WL 1734446, at *1 (W.D. Wis. May 3, 2021) ("T]here is no reason to think that the extremely broad requests he made

[for defendants' personnel files and inmate grievances] are relevant to his claims or proportionate to the needs of this case, which is about several denials of medical ice."). Plaintiff indicates that he seeks this information for impeachment purposes. However, Plaintiff will not need this type of information at the summary judgment stage because the Court will "resolve all factual disputes in the non-moving party's favor without resorting to credibility determinations." *Id.* If the case proceeds past summary judgment, the Court will consider any request to reopen discovery for the purposes of obtaining this impeachment information.

Next, the Court will deny Plaintiff's motion to appoint a forensic document examiner. Plaintiff seeks a specialist to determine whether a May 14, 2023 declaration, purportedly signed by Defendant Stephenson, is authentic. The Federal Rules of Civil Procedure allow courts to appoint an expert to help sort through conflicting evidence. *See* Fed. R. Evid. 706(a); *Ledford v. Sullivan*, 105 F.3d 354, 358 (7th Cir. 1997). However, the Court does not find that an expert is needed at this time. Plaintiff describes a factual dispute about a document's authenticity that could potentially preclude summary judgment. Again, credibility determinations are not made at the summary judgment stage and all facts are construed in the non-moving party's favor. Thus, Plaintiff's request is premature. If the case proceeds past summary judgment, Plaintiff may raise this issue again if needed.

5.   **CONCLUSION**

For the reasons explained above, the Court will deny Defendants' motion for partial summary judgment, ECF No. 56. This case will proceed on the merits and summary judgment motions may be filed on or before **September 14, 2026**. If the case proceeds past summary judgment, Plaintiff may raise his discovery issues again related to impeachment evidence.

Accordingly,

**IT IS ORDERED** that Defendants' motion for partial summary judgment based on exhaustion, ECF No. 56, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for order in opposition to Defendants' motion for partial summary judgment, ECF No. 61, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel discovery, for leave to file interrogatories, and to modify scheduling order, ECF No. 68, be and the same is hereby **DENIED** as described in this order;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint forensic document examiner, ECF No. 74, be and the same is hereby **DENIED without prejudice**; and

**IT IS FURTHER ORDERED** that summary judgment motions may be filed on or before **September 14, 2026**.

Dated at Milwaukee, Wisconsin, this 16th day of June, 2026.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

Case 2:24-cv-00764-JPS    Filed 06/16/26    Page 15 of 15    Document 81